IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KAITLIN MARIE BRIX, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>KILOLO KIJAKAZI,[1] )<br>Acting Commissioner of the Social )<br>Security Administration, )<br>)<br>Defendant. ) | Case No. CIV-20-154-SPS |

## OPINION AND ORDER

The claimant Kaitlin Marie Brix requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the Commissioner's decision should be REVERSED and the case REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity. Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity (RFC) to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Commissioner's.  *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991).  But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was twenty-three years old at the time of the administrative hearing (Tr. 36).  She completed the tenth grade, earned her GED, and has no past relevant work (Tr. 26, 277).  The claimant alleges that she has been unable to work since December 31, 2012, due to irritable bowel syndrome, constipation, migraine headaches, back pain, anxiety attacks, and depression (Tr. 276).

## Procedural History

On January 22, 2018, the claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85.  She also applied for child's insurance benefits on the earnings record of an insured person, *see* 42 U.S.C. §§ 401-434, alleging she was eighteen years or older when she filed but that she had not attained the age of twenty-two.  *See* 20 C.F.R. § 404.350(a)(5).  Her applications were denied.  In a written opinion dated September 16, 2019, ALJ Jeffrey S. Wolfe conducted an administrative hearing and determined that the claimant was not disabled pursuant to her claim for child's benefits prior to May 5, 2017 (the date she attained age

22),³ and that she was not disabled for supplemental security income benefits as of her protected filing date of January 22, 2018 (Tr. 15-27).  The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal.  *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation.  He found that the claimant retained the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), except that she was able to stand and walk two hours in an eight-hour workday, sit without limitation, and lift/carry under ten pounds frequently and up to ten pounds occasionally (Tr. 21).  The ALJ then concluded that although the claimant had no past relevant work to return to, she was nevertheless not disabled because there was work she could perform, *e. g.*, order clerk, optical goods assembler, and table worker (Tr. 26-27).

## Review

The claimant contends that the ALJ erred by:  (i) miscalculating her period of substantial gainful activity and (ii) failing to properly evaluate the medical evidence related to all of her impairments, which resulted in him (iii) improperly identifying jobs she could perform at step five. The Court agrees with the claimant's second contention, and the

---

³ Pursuant to 20 C.F.R. § 404.350(a), ALJ evaluated the claimant's allegations under the adult standard of disability from May 5, 2013, when the claimant turned eighteen years old.  The claimant has not challenged this analysis.

decision of the Commissioner should therefore be reversed and the case remanded for further proceedings.

The ALJ found that the claimant had the severe impairment of degenerative disc disease, as well as the nonsevere impairments of migraines, IBS, colonic inertia, depression, anxiety, post-traumatic stress disorder, and attention deficit hyperactivity disorder (Tr. 19-20). The relevant medical record as to the claimant's impairments reveals that the claimant was in a car accident while six months pregnant in 2011, causing injuries to her back and frequent migraines (Tr. 373, 441-442). She continued to receive treatment for chronic pain and migraine headaches (Tr. 514-525). Additionally, she reported a history of anxiety as far back as 2012 (Tr. 525, 560-581). Although treatment notes indicate she sometimes denied anxiety, she was assessed with anxiety disorder and prescribed related medication (Tr. 560-562, 567-569).

The claimant received limited mental health treatment with Dr. Dustin Hayes, D.O., in the fall of 2018 and spring of 2019 (Tr. 615-621). At her initial appointment with him, she reported depression and anxiety, and he noted she was already currently prescribed Prozac and had previously been prescribed Lexapro (Tr. 615). He prescribed additional medications, then recommended medication management and cognitive behavioral therapy, noting she had a "vague" genetic predisposition for psychiatric illness (Tr. 616). He assessed her with ADHD, unspecific mood disorder, chronic PTSD, generalized anxiety disorder, panic disorder, and moderate opioid use disorder (Tr. 617). At her follow-up appointment, she reported continued anxiety and depression, as well as irritability (Tr. 619).

On June 12, 2019, Dr. Subramaniam Krishnamurthi, M.D., conducted an internal medicine evaluation of the claimant (Tr. 594-602). He noted her reported history of, *inter alia*, anxiety and PTSD, as well as her medications that included both lorazepam and trazodone (Tr. 594). He noted she was alert and oriented, answered questions appropriately, and had normal mentation and intelligible speech (Tr. 595). In addition to discussing his physical findings, his final impression included the claimant's history of*,* *inter alia*, anxiety and PTSD (Tr. 596).

On June 16, 2019, Dr. Larry Vaught, Ph.D. conducted a mental status examination of the claimant (Tr. 622-629). He noted that she was well-oriented and cooperative, though occasionally tearful when discussing a history of abuse (Tr. 626). Upon evaluation, she had generally average intelligence, including IQ, attention/concentration, memory, language and communication, visual/spatial, motor function, and personality function (Tr. 626-628). He noted that medications had helped with anxiety, depression, and insomnia (Tr. 629). However, he also noted she was somewhat anxious and hypervigilant in public, preferring to be with her boyfriend (Tr. 629). He concluded that her primary issues involved her psychiatric conditions, for which she was prescribed medications, but that those conditions may predispose her to be anxious and overwhelmed in crowded or public situations. Additionally, he noted that depression may at times affect her motivation, sleep, and energy levels (Tr. 629). He completed a mental RFC assessment in which he indicated she had a marked limitation in the ability to interact appropriately with the public, as well as moderate limitations in interacting with coworkers and supervisors, and to usual work situations (along with a few other mild limitations) (Tr. 622-623). In support, he indicated

that the claimant was anxious in public due to PTSD and gastrointestinal issues, and that she had chronic depression and anxiety (Tr. 623).

As to her mental impairments, state reviewing physician Dr. Susan Dougherty, Ph.D., found initially that the claimant did not have a severe mental impairment (Tr. 122-123). On reconsideration, Dr. James Sturgis, Ph.D. found that the claimant had mild to moderate limitations caused by severe depression and anxiety (Tr. 140-141). Specifically, he found she was moderately limited in the ability to understand and remember detailed instructions, carry out detailed instructions, and set realistic goals or make plans independently of others, and that she was markedly limited in the ability to interact with the general public (Tr. 145-146). He concluded that she could perform simple and some complex tasks, relate to supervisors and peers on a superficial work basis, and adapt to a work situation, but that she could not relate to the general public (Tr. 146).

In his written opinion at step two, the ALJ considered the four broad functional areas of mental functioning and found she had only mild limitations in each area, concluding that her mental impairments were therefore nonsevere. As to the area of interacting with others, the ALJ found she had only a mild limitation, supporting this finding with a one-time treatment note that her mood and affect were normal and appropriate, as well as Dr. Vaught's exam that showed she was cooperative, exhibited functional receptive and expressive vocabularies, scored within the average level on the Rorschach test, and had an appropriate affect (Tr. 20). He did not acknowledge Dr. Vaught's statement that her psychiatric conditions may predispose her to be anxious and overwhelmed in crowded or public situations, nor did he acknowledge Dr. Sturgis's finding that she had a marked

limitation in the ability to interact appropriately with the general public (Tr. 146, 629). At step four, the ALJ noted Dr. Hayes's treatment notes, but only discussed his physical findings (even though he was a *mental health treatment provider*), *i. e.*, a normal gait and stations and musculoskeletal system, without mentioning or assessing his mental health treatment notes (Tr. 24). He found Dr. Sturgis's reviewing opinion unpersuasive because he had already found her mental impairments to be nonsevere, and cited a one-time treatment note that the claimant's mental status was essentially normal (Tr 25). He then stated that his conclusion that she only had nonsevere mental impairments was *supported* by Dr. Vaught's opinion because she presented with an appropriate affect, had an average memory, and had intact academic skills (Tr. 25). He nevertheless found Dr. Vaught's opinion to be unpersuasive because the claimant denied anxiety and depression on March 16, 2018, and it was inconsistent with Dr. Krishnamurthi's *physical* examination opinion where he stated that the claimant was alert, oriented, answered all questions appropriately, had a normal mentation, and intelligible speech (Tr. 25). He then concluded that only the claimant's stated physical impairments were severe and she was not disabled (Tr. 26-27).

The claimant contends that the ALJ failed to properly account for her mental impairments, and the Court agrees. Because the ALJ did find that the claimant had another severe impairment, *i. e.*, degenerative disc disease, any failure to find the claimant's additional impairments severe at step two is considered harmless error *at step two* because the ALJ would nevertheless be required to consider the effect of these impairments and account for them in formulating the claimant's RFC *at step four*. *See, e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the

combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.") (*quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004)).  *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two.  His failure to find that additional alleged impairments are also severe is not in itself cause for reversal.  But this does not mean the omitted impairment simply disappears from his analysis.  In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted].

But here the ALJ erred *at step four* when he failed to account for the claimant's nonsevere mental impairments as he formulated her RFC, specifically with regard to her diagnosed anxiety, depression, and PTSD.  The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot adequately assess whether relevant evidence supports the ALJ's RFC determination."  *Jagodzinski v. Colvin*, 2013 WL

4849101, at *2 (D. Kan. Sept. 11, 2013) (*citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003)). In this case, although the ALJ *discussed* some of the evidence related to the claimant's mental impairments throughout the evaluation, he focused only on records that supported his conclusions while ignoring consistent records from treating, consultative, *and* reviewing physicians which supported additional limitations, particularly regarding her ability to interact with others. *See Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") [citation omitted]. *See also Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir.1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects.") [citation omitted].

The claimant further contends that the ALJ did not properly account for Dr. Vaught's consultative evaluation throughout the analysis, and the Court agrees. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c(a), 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency

of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c), 416.920c(c). Supportability and consistency are the most important factors and the ALJ must specifically explain how both factors were considered, although the ALJ is generally not required to explain how the other factors were considered. *See* 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3). In this case, while the ALJ improperly addressed the supportability and consistency factors as to his opinion.

The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Likewise, the consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). Here, the ALJ pointed to a one-time note where the claimant denied depression (while being treated with medication for anxiety) then stated that Dr. Vaught's opinion as to her *mental* impairments was inconsistent with Dr. Krishnamurthi's *physical* exam findings.

However, the ALJ completely ignored Dr. Hayes's treatment records as to the claimant's mental impairments, and further ignored Dr. Krishnamurthi's recognition of the claimant's mental impairments.  Moreover, the ALJ did not discuss how Dr Vaught's opinion was *consistent* with Dr. Sturgis's assessment, which he also rejected based on one treatment notation where the claimant was oriented and had a normal mood and affect.  This failure to properly account for the evidence has a direct impact on the mental limitations assigned on the claimant in the RFC.  This was error.  *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence.").

Because the ALJ failed to properly evaluate the medical opinion evidence, the decision of the Commissioner should be reversed and the case remanded to the ALJ for further analysis.  On remand, the ALJ is instructed to consider *all* of the evidence in the record, both physical and mental, in assessing the claimant's RFC.  If such analysis results in any adjustment to the claimant's RFC, the ALJ should then re-determine what work, if any, the claimant can perform and ultimately whether she is disabled.

## Conclusion

The Court hereby FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence.  The decision of the Commissioner is accordingly REVERSED and the case is REMANDED for further proceedings consistent herewith.

**DATED** this 24th day of March, 2022.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**